UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVON TINDLE,

        Plaintiff,

v.

WAYNE COUNTY SHERIFF
DEPUTY L. ENOCHS,

        Defendant.

_____/

Case No. 2:08-cv-13056

HONORABLE STEPHEN J. MURPHY, III

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket no. 9)

This is a civil rights action in which the plaintiff, Devon Tindle, alleges that the defendant, Wayne County Sheriff Deputy Latonya Enochs, violated his constitutional rights by detaining and interrogating him in the course of a raid on an alleged drug house. The plaintiff was 17 years old at the time of the incident. This matter comes before the Court on defendant's motion for summary judgment. Based on a review of the facts in the record, it appears that the defendant violated the plaintiff's civil rights by detaining him in handcuffs for 2 to 3 hours while a residence that he did not occupy was being searched pursuant to a search warrant, and the defendant is not entitled to qualified immunity on the present state of the proceedings; therefore, defendant's motion for summary judgment will be denied as to plaintiff's federal claim. Summary judgment will be granted, however, as to the plaintiff's state law claims of false arrest, false imprisonment, assault and battery and malicious prosecution.

## FACTS

The following are the facts in the record, viewed in the light most favorable to plaintiff, the non-moving party.

Deputy Enochs is a member of the Wayne County Sheriff Narcotics Enforcement Unit, which conducts undercover, surveillance and law enforcement operations related to illegal narcotics trafficking. Enochs Aff. ¶ 2. In 2006, she was involved in several surveillance and enforcement activities related to illegal drug trafficking in and out of houses on the 20000 block of Fenmore in the City of Detroit. *Id.* ¶ 3. Several houses on the street are known as "drug houses," and they have been the subject of repeated citizen complaints, surveillance activities, undercover drug buys, and execution of search warrants where drugs, money and guns have been found -- as well as drug forfeiture proceedings. *Id.*

Sometime before December 13, 2006, the narcotics unit received a complaint that illegal drugs were being sold at 20075 Fenmore. *Id.* ¶ 4. Enochs had been involved in seven incidents involving surveillance, undercover-officer buys, traffic stops and search warrant executions targeting both 20075 and the house immediately to the north of that address, which shared a common driveway with 20075 Fenmore. *Id.* ¶ 5. According to Enochs, people would purchase drugs from both houses through windows that face the common driveway (the north window to 20075 and the south window of the house next door). *Id.* ¶ 6. Typically, cars would stop in the street, someone from the car would walk up the driveway to a window that faces the driveway, purchase drugs through the window, return to the car and drive away. *Id.*

On December 12, 2006, a confidential informant told Enochs that illegal drugs were being sold out of 20075 Fenmore. Enochs Aff. ¶ 7. Enochs arranged for a controlled buy at that location that confirmed the presence and sale of illegal drugs there. *Id.* Enochs obtained a search warrant for 20075 Fenmore on December 13, 2006 from a magistrate of the (state) 36th District Court in Detroit. *Id.* ¶ 8.

A team was assembled to execute the search warrant. Enochs Aff. ¶ 9. Enochs was the officer in charge, and was also on the raid entry team whose job was to execute the search warrant and, as such, was standing by listening to the radio as an undercover officer walked up to 20075 Fenmore and attempted, unsuccessfully, to purchase drugs. *Id.* ¶ 9. Deputy Kelly radioed that the undercover officer was walking away from 20075 Fenmore as a blue car pulled up into the driveway, three men were leaving the house and looked like they were going to leave in the blue car. *Id.* ¶ 11. The raid team then approached 20075 Fenmore from up the street where they had been waiting. *Id.* ¶ 12. They knocked, no one answered, and they entered the house to execute the warrant. *Id.* Marijuana and crack cocaine were found inside and outside 20075 Fenmore packaged in a manner consistent with distribution. *Id.* ¶ 14.

The plaintiff, Devon Tindle, 17 years old, was playing video games at the house immediately to the north of 20075 Fenmore on the afternoon of the raid. Tindle dep. p. 20.[1] He left that house with some friends, got into the blue car identified by Officer Kelly, and he had driven down the road when his car was stopped by Wayne County Sheriff deputies. *Id.* p. 21. He was forced to lay on the ground on his stomach, he was handcuffed, and placed in the back of a Sheriff deputy's car. *Id.* p. 27-28. He was then taken to the house at 20075 Fenmore, along with the other occupants of the blue car. *Id.* According to Enochs, Sheriff's deputies arrived with Tindle after the house had been secured and while the deputies were still searching the house. Enochs Aff. ¶ 15. Tindle was taken to a back room at 20075 Fenmore for questioning. *Id.* p. 26. He was interrogated for two to three

---

[1]Enochs asserts in her brief that Tindle had been at 20075 Fenmore, rather than the house next door. Tindle has testified otherwise, and on a motion for summary judgment the Court is to view the facts in the record in the light most favorable to the non-moving party, which is the plaintiff here.

hours while handcuffed. *Id.* He denied that he had been at 20075 Fenmore and denied any involvement in any drug activity. *Id.* p. 32.[2] Tindle's parents were not notified throughout the course of the interrogation. *Id.* Finally, after two to three hours, Tindle was released with a misdemeanor citation for loitering in a drug house. *Id.* p. 21. The misdemeanor citation was ultimately dismissed. *Id.*

## ANALYSIS

Tindle's complaint alleges four counts against Deputy Enochs. Count I is a state-law based claim for false arrest and false imprisonment; Count II is a claim for assault and battery; Count III is a claim for malicious prosecution; and Count IV asserts a claim under 42 U.S.C. § 1983 based on false arrest and false imprisonment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The

---

[2]Enochs states that Tindle told her that he smoked about $5 worth of marijuana every day for the past year.

moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

I.    Plaintiff's Section 1983 Claims

Count IV of the complaint asserts a claim for unlawful arrest and detention under 28 U.S.C. § 1983. Enochs asserts that the Court should grant summary judgment on Tindle's

section 1983 claim because, she asserts, no Fourth Amendment violation occurred and because, even if a constitutional violation did occur, qualified immunity mandates summary judgment in her favor.

A. Did a constitutional violation occur?

The Fourth Amendment to the United States Constitution forbids "unreasonable" searches and seizures. U.S. Const. Amend. IV. The general rule is that "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). The Supreme Court, however, has carved out an exception to the probable cause requirement for "limited intrusions that may be justified by special law enforcement interests." *Id.*

One such exception to the probable cause requirement was identified by the Supreme Court in *Michigan v. Summers*. There, the Supreme Court ruled that the detention of a resident of premises during a legal search of that premises pursuant to a search warrant did not violate the Fourth Amendment prohibition against unreasonable searches and seizures. *Id.* at 704-05. The Court relied primarily on the fact that the police had obtained a warrant to search Mr. Summers' house for contraband, and that "a neutral and detached magistrate . . . had authorized a substantial invasion of the privacy of the persons who resided there." *Id.* at 701. The Court concluded that the detention of a resident of the house while it was being searched was less intrusive than the search itself. *Id.* The Court also noted that the detention imposed was "not likely to be exploited by the officer or unduly prolonged in order to gain information, because the information the officers seek normally will be obtained through the search and not through the detention. " *Id.* The Court added that "because the detention in this case was in the respondent's own residence, it could add only minimally to the public stigma associated with the search itself and would involve

6

neither the inconvenience nor the indignity associated with a compelled visit to the police station." *Id.* at 702.

The Court expanded upon the *Michigan v. Summers* exception in *Muehler v. Mena*, 544 U.S. 93 (2005). In *Mena,* a § 1983 action, the Court found that the Fourth Amendment was not offended by the handcuffing, detention and questioning of a resident of a house while the police executed a search warrant seeking weapons and evidence of gang membership. The plaintiff, Mena, was sleeping in her bedroom at 7:00 a.m when the police, including a SWAT team, executed the search warrant. Id. at 96. Mena, along with three other individuals, was handcuffed and taken into a converted garage which contained several beds and other bedroom furniture. *Id.* While the search proceeded, one or two officers guarded the four detainees, who were allowed to move around the garage but remained in handcuffs. *Id.* Immigration and Naturalization Service officers who accompanied the officers executing the warrant asked each detainee's name, date of birth, place of birth and immigration status. *Id.* The search yielded a gun, ammunition, certain gang paraphernalia and a bag of marijuana. *Id.* Mena was released before the officers left the area. *Id.*

The Court of Appeals determined that the officers had violated the Fourth Amendment because, it concluded, it was objectively unreasonable to confine Mena in the converted garage and in handcuffs during the search and that they should have released her as soon as it became clear she posed no immediate threat. *Mena*, 544 U.S. at 97. The Court of Appeals also found that the questioning of Mena about her immigration status constituted an independent Fourth Amendment violation. *Id.*

The Supreme Court reversed, finding that Mena's detention was permissible under *Michigan v. Summers,* and the Court wrote that

Mena's detention was, under *Summers*, plainly permissible. An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof' justifying detention or the extent of the intrusion to be imposed by the seizure.' Thus, Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search.

*Mena*, 544 U.S. at 98 (internal citation omitted).

The Court found that the officers' use of force in handcuffing Mena during her detention and the fact of her detention in the converted garage were separate intrusions that needed to be analyzed separately, but also found that the police actions were reasonable because the governmental interests outweighed concerns over the marginal intrusion, given the purpose of the search for weapons and the fact that the officers needed to detain multiple occupants. *Mena*, 544 U.S. at 99-100. The Court also found the length of the detention, two to three hours in handcuffs, to be reasonable under the circumstances. *Id.* at 100.

Summers and Mena were both residents of the premises subject to the search warrant in their respective cases. Tindle was not an occupant or resident of the searched premises. The Sixth Circuit has extended *Summers* to apply to non-residents that are present in a house at the time of search, *United States v. Fountain*, 2 F.3d 656 (6th Cir. 1993) (*overruled on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)), to those who arrive at the scene of a search, even if they were not inside the residence or present when the police first arrived, *United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000), and to an individual who approaches a property being searched pursuant to a warrant, pauses at the property line and flees when the officers instruct him to get down. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). It is clear, based on this authority, that in the Sixth Circuit, the fact that Tindle was not a resident of 20075 Fenmore does not preclude the application of *Summers* and *Mena* if Tindle was present in the house at the

time the search warrant was executed.  On the other hand, in the case of a detention of a non-resident and non-occupant, the Sixth Circuit does require a showing by the defendant of particular facts and circumstances that "substantiate the legitimate law enforcement interests that support the warrantless seizure."  *United States v. Davenport*, 2006 WL 3447347 (E.D. Mich. Nov. 28, 2006) (Gadola) (citing *Fountain*, 2 F.3d at 663, *Bohannon*, 225 F.3d at 617, and *United States v. Ridge*, 329 F.3d 535 (6th Cir. 2003))

Tindle, however, has put forward facts in evidence tending to show that he was not ever even inside 20075 Fenmore but rather was visiting the house next door and left that house prior to the execution of the search warrant at 20075 Fenmore.  The sheriffs detained him in the apparently mistaken belief that he had been in the house subject to the warrant.  This case, therefore, does not fall within the *Summers'* exception to the general rule that probable cause is required for a seizure.  Based upon Tindle's testimony that he was never present at 20075 Fenmore before the deputies brought him there, *Summers* and *Mena* do not apply to his detention, and his detention falls under the general rule that a seizure with the general attributes of an arrest is unreasonable absent probable cause.

In sum, when viewed in the light most favorable to the plaintiff, the facts in the record establish that Tindle's constitutional right to be free of unreasonable seizures was violated when he was delivered to 20075 Fenmore and forced to remain there, in handcuffs, while the sheriffs searched the premises pursuant to the search warrant.

B.  Qualified Immunity

Enochs argues that even if a constitutional violation occurred, her actions are protected by qualified immunity.  She argues that she heard Deputy Kelly advise her and other officers via radio that the plaintiff and his friends had exited 20075 Fenmore, not the house next door, and that she therefore reasonably believed that her actions were proper.

Tindle argues in response that such a belief was not objectively reasonable because Enochs was the officer in charge, she was aware that 20075 shared a common driveway with the house next door, she was aware that Tindle was only 17 years old and she did not contact his parents, and she allowed the 17 year old boy to be handcuffed and questioned for 2-3 hours despite his denials of any contact with the 20075 Fenmore address.

> Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson*, 129 S.Ct. at 815. Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*, 287 F.3d 492,501 (6th Cir. 2002). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343,341 (1986)). Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 129 S.Ct. at 815.

*Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  The plaintiff bears the burden of showing that qualified immunity does not apply.  *Id.*

Qualified immunity entails a two step analysis.  *Drogosh v. Metcalf*, 557 F.3d 371, 377 (6th Cir. 2009).   The Court should first ask whether the plaintiff has demonstrated a violation of a constitutional right.  *Id.*  If so, the Court should then determine if the right violated was so clearly established that a reasonable official would understand that what he is doing violates that right.  *Id.*

The Court finds that the defendant is not entitled to summary judgment based upon qualified immunity because Tindle's detention violated his clearly established rights under the Fourth and Fourteenth Amendments.  Viewing the facts in the light most favorable to the plaintiff, as the Court must do on defendant's motion for summary judgment, the plaintiff here was a 17 year old boy who was never in the house that was searched, was seized at least a  block  away, taken to the target house, handcuffed, held for two to three hours and

interrogated despite telling the defendant that he was a minor and that he was never at the target house. There is no authority for seizing a person and taking them to a strange house and holding them there while a search warrant is being executed, which fact the Court must accept as true on the present summary judgment motion.

Again, the general rule is that "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless supported by probable cause." *Summers*, 452 U.S. at 700. As discussed above, because Tindle was not present at the time the search warrant was being executed, nor was he approaching the house or fleeing from the house, his seizure was not justified by *Michigan v. Summers* and its progeny. At the time of Tindle's detention, the law was clearly established that taking a person off the street and holding him for two hours while a neighboring house was being searched would violate that persons' rights under the Fourth Amendment to be free from unreasonable searches and seizures.

Defendant relies upon a mistake of fact in order to support her claim of qualified immunity, arguing that her understanding that Tindle was in the target house immediately prior to execution of the search warrant was objectively reasonable in light of what she knew at the time. The Court is not persuaded by this argument. While the initial mistake made by Officer Enochs may have been objectively reasonable in light of the facts and circumstances known to her at the time of the seizure, Enochs subsequently received information that made the mistake unreasonable. Viewing the evidence in the record and all inferences therefrom in the light most favorable to the plaintiff, the Court finds that it was not objectively reasonable for the defendant to persist in her mistake after Tindle told the police that he had never been in the target house, and to continue to have Tindle held in handcuffs and questioned for two to three hours while the house was searched. The

plaintiff has met his burden of showing material issues of fact concerning the applicability of the defense of qualified immunity, and summary judgment will therefore be denied.

III.    Should Plaintiff's State Law Claims be Dismissed?

Enochs also argues that summary judgment should be granted to defendant on Tindle's state law claims for false arrest, false imprisonment, malicious prosecution and assault and battery because the undisputed evidence shows that Enochs did not commit these torts and because state law immunizes her as a government actor under these circumstances.  Tindle's response brief does not address any of these state law issues, and he may therefore be deemed to concede dismissal of them.  *See Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470 at * 2 (6th Cir. 1989) (district court may deem plaintiff to waive opposition to motion to dismiss where plaintiff fails to respond or otherwise oppose defendant's motion).  The Court will therefore grant summary judgment as to Counts I, II and III of the complaint.

**CONCLUSION**

The Court will grant summary judgment on Tindle's state law claims of false imprisonment, false arrest, malicious prosecution and assault and battery because Tindle has failed to contest the defendant's motion for summary judgment as to those claims.  As for the Section 1983 claim, it appears that, viewing the facts in the record in the light most favorable to the plaintiff, a constitutional violation occurred because the plaintiff was never present in the house subject to the search warrant until the officers took him there, and therefore the Summers exception to the probable cause requirement does not apply.  As to defendant's qualified immunity claim, summary judgment will be denied because while the facts show that Deputy Enochs reasonably believed that the plaintiff had been inside 20075 Fenmore immediately prior to execution of the search, the facts also show that,

viewed in the light most favorable to the plaintiff, Deputy Enoch's initial reasonable belief in the reasonableness of detaining the plaintiff was undermined by the plaintiff's age, the fact that he denied being at the house and because the two houses shared a common driveway, all of which would support his claim of having been in the house next door.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

Defendant's motion for summary judgment is **GRANTED** as to plaintiff's state law claims of false arrest, false imprisonment, malicious prosecution and assault and battery and the claims contained in Counts I, II and III of the complaint; but Defendant's motion for summary judgment is **DENIED** as to Count IV of the Complaint, which contain plaintiff's § 1983 claims, because the Court finds genuine issues of material fact as to the applicability of defendant's claim of qualified immunity..

**SO ORDERED**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 19, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 19, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager